May it please the court. Your honors, the district court committed reversible plain error by assessing two criminal history points for Mr. Juan-Solano's prior sentence for domestic violence. The error was plain because the court should have added one criminal history point rather than two. The PSR is clear that the first sentence, the original sentence, was 180 days suspended for 155 days for two years of probation, which equals 25 days in custody. The revocation sentence was 180 days with 155 days suspended, which also equals 25 days in custody. Fifty days in custody under the guidelines 4A1.1C should have been two criminal history points. Now, the government wants to rely on the 2012 revocation PSR rather than the 2015 PSR for the new offense where the error occurred. But the government's position is just without merit. The 2012 PSR is irrelevant because the district court specifically adopted the factual findings and the guideline applications in the 2015 PSR. And that's in the 40859 record at page 118. That's the transcript. And in that same record at page 141, which is the statement of reasons. So it's clear that the district court relied on the 2015 PSR and made a plain sentencing error that was contrary to the plain language of the sentencing guidelines. The government's brief in its summary of the argument, but nowhere else, also says that the court imposed the 54-month sentence under 3553A as sufficient but not necessary. But that's without merit, too. The district court did not state that anywhere at the sentencing, and the sentence was not a variance at all. It was a departure downward based on family circumstances. The government wants to make this into a factual dispute, but this is not a case about a factual dispute. So we're here on plain error? Yes, Your Honor. We are here on plain error. The government says it's a factual dispute, but it's not. The district court, as I said, specifically adopted the... What if we look at the record and say there's some question as to whether the district court correctly found the facts? There's no reason to credit one over the other. Well, there is, Your Honor, because the district court adopted the 2015 PSR... Which is plainly contrary to the 2012 PSR. Right, but the district court adopted the 2012 PSR. The government did not object in the court below to the district court's adoption of the 2015 PSR. But we see from the record that there's a conflict between what the district court said he adopted and the 2012, and that's a conflict in the factual record, and why should we on plain error get into that? Because, Your Honor, first of all, the government, as I said, and I'm going to get to the second premise... They didn't concede it. They just didn't object. Right, and under the United States Supreme Court decision in green law, if they thought there was a problem, they should have cross appealed. They haven't cross appealed on that, so the record is what it is. I mean, if they had a problem with the district court's adoption of the PSR, they had every right to file a notice of appeal, following our notice of appeal, and say, wait a minute, this is an incorrect factual error. Given that they didn't, the facts are as the district court adopted them. With regard to the third prong of plain error, Your Honors, the Supreme Court made clear in Molina-Martinez that when the district court uses the incorrect guideline, that is sufficient to demonstrate a reasonable probability of a different outcome, and under Molina-Martinez also, the Supreme Court says that that's true regardless of whether the sentence falls within or outside of the sentencing guidelines. And as this court found in Martinez-Rodriguez, just handed down this year, Molina-Martinez overrules this court's prior decisions in Pratt and so forth that look for additional evidence for a difference in the outcome. Now with regard to the fourth prong, Your Honor, this court in the past has stated that an erroneous guideline application is sufficient for both the third and fourth prong, and that under Price, this court held that it would be unfair or impugn the fairness or integrity of the guidelines to deprive the defendant of the opportunity to be sentenced under the correct sentencing guidelines. That pretty well double counts the third prong, doesn't it, or it collapses the third and the fourth prong, and we've said that you can't do that. You've said that, but you've done it nonetheless. I mean, the court's clear, if you look at this court's precedent, they do collapse the third and fourth prong. You can say they haven't, but those cases that found it sufficient haven't been overruled, so there may be a conflict in this court's precedent, but that would be for the en banc court to clear up. Well, Escalante, in bank court, pretty well cleared that up and said the fourth prong isn't automatic and that it's separate. I don't know why that doesn't overrule. The majority, I mean, I dissented on that, but the majority was pretty careful to specify that the fourth prong isn't automatic. Well, it's not automatic, Your Honor, but nonetheless the cases have found what was sufficient for the third was sufficient for the fourth. I agree. If you're saying it's not automatic, I agree with that, but let's, even given the way Your Honor construes the precedent, this still is sufficient to meet. It's not, but it means that all of these sentencing appeals simply almost didn't, you need not make any objection below and just bring it up here. Every deviation from the small error that's made has got to be noticed. That's a rather extraordinary proposition, given the very nature of the sentencing guidelines and the numbers of these cases. Well, I would agree with Your Honor that not every deviation has to be noticed. For example, I think just recently the court found there was a one-month deviation. What difference does that make in terms of reviewability? That is, in terms of, the last prong is whether or not an error really that was not objected to ought to nonetheless be contrary to our strong principles that you do not review matters to which no objection was lodged. In those circumstances, if you just go forward and review all of those cases, what you have done is to eliminate the plain error doctrine. I mean, the contemporaneous objection rule. I don't know if you follow what I'm saying. I do, Your Honor, I do. And I agree, like I said, the court, recently there was a one-month error. The court didn't reverse. The court didn't find the fourth prong was satisfied. Given that the fourth prong is an independent prong, I think this case meets the fourth prong as an independent prong. Number one, How does it impugn the integrity of the court and judicial proceedings of an error involving a calculation of 30 days or whatever it is? It impugns the fairness, Your Honor, the fairness of the proceedings. Number one, there's a 14-month difference in the correct guideline range and the incorrect guideline range. And this court has found with far less difference in the guideline range that the fourth prong is satisfied. Number two, the court departed downward by 16 months in this case and it ran the revocation sentence, which normally the guidelines say should be run. That cuts directly against you, any conclusion that this deviation, this error or whatever, impugns integrity of the sentencing procedures. I don't think it does, Your Honor. I mean, the guidelines say you don't run any of the revocation sentence concurrently. You don't do that. And nevertheless, the court went against that presumption and ran two months of that concurrently. And this court in, I think it's Mar-a-Zago, Salazar in 2014, looked at a sentence that was much like this and said the court carefully structured the sentence to be at the minimum of the sentencing guideline range and then structured the revocation sentence to be no more than 70 months and that was sufficient to warrant satisfaction. Who was defending this man at trial? I'm sorry, Your Honor? Who was defending this man at trial? I don't mean the person, identity. Was it a public defender? I believe it was, Your Honor. Okay, so it's such an egregious error to impugn integrity of the courts and the public defender's office didn't even notice it. Well, Your Honor, Rule 52B doesn't mention federal public defenders. Rule 52B mentions plain error and a second prong of clear error and a third prong of affect substantial rights and a fourth prong of impugn the fairness and integrity of the proceedings. Whether it was a federal public defender, whether it was privately retained counsel doesn't matter. The point being that implicit is really a compliment to the public defender's office. They're very sophisticated, probably more sophisticated than the practicing barb because they work daily with these sentencing guidelines, routinely. They know them inside and out. And this error slid right through and nobody paid any attention to it until we get up on appeal and you pick it up. And now you're arguing that it impugns the very integrity of the court. I just find that something flawed in that whole system. But your view doesn't weigh with Rule 52B. If a federal public defender were in the district court below, well, forget about it. There's no 52B, there's no nothing because surely the federal public defender would have noticed it. But that's not the rule, Your Honor. It doesn't matter who was in the court below. Even if it was Clarence Darrow, Rule 52B applies. And here, as I said, the first three prongs are satisfied given the difference in the sentence, the guideline range, given the departure downward. Let me just ask you about your view of how we deal with the fourth prong, assuming that we get to the fourth prong. You have mentioned, and I certainly agree, there are panels that have sort of collapsed the fourth prong into the third or that there's only a very small amount of time in the difference of the potential difference they've exercised their discretion. I hope you're not suggesting that we're bound by the way that prior panels exercised their discretion. In other words, we still have free and open discretion. Do we not even under our rule of orderliness to say that our judgment is different from that previous panel's judgment in another case? Your Honor, I agree. I think under the third and fourth prong, I think every case has to be evaluated by the court on its own and exercising under the fourth prong its own discretion. So I do agree that every case has its own facts and must be evaluated based on those facts. Then what is your argument with regard to these other cases? Well, I think the other cases guide the court in what panels thought satisfied the fourth prong. I mean, I think whether a case is published, unpublished, based on the facts, based on the unique circumstances of the case, I think the court usually, as I'm aware, seeks guidance from what its other panels have done. And so I submit those cases to the court to show that other panels have seen facts far less compelling than this to find that the fourth prong was satisfied. Your Honors, if there are no further questions, I'll reserve the rest of my time for rebuttal. Thank you. You've saved time for rebuttal, Mr. Sokolow. Thank you. Ms. Offenhauser? Two months in a row. Nice to see you back. Thank you, sir. May it please the Court. Addressing first the third prong, what Molina-Martinez holds is that the procedural error in misapplication of the guidelines may be sufficient to show a reasonable probability of a different result absent the error, but not always. In unusual circumstances, such as this case, the defendant has the burden to show more beyond the error itself. In the unpublished case of Santa Cruz-Hernandez, this Court held that the defendant's mistaken application of an incorrect guideline range is not, per se, a reversible error, and that the record may show that the district court thought the sentence it chose was appropriate irrespective of the guideline's range. And under Molina-Martinez, the Supreme Court recognized that the government is free to point to parts of the record, including relevant statements of the judge. What was the consequence of the error? I'm sorry, what? What was the consequence of the error? The consequence of the error? How did it affect the sentence? It did not. What the district court did was apply a downward departure under Application Note 9 to 201.2, which . . . The downward departure departed off a guideline . . . The downward departure . . . It wasn't an independent, non-guideline sentence, was it? Well, in some ways, it actually, in my view, is. What the district . . . what Application Note 9 requires . . . It's a unique downward departure. What Application Note 9 requires is that the district court make an independent assessment of the defendant's character and personal history as ties to the community or to the United States and that the district court consider which are the sentencing factor under 3553A1 and that the district court, in determining whether to grant a downward departure, whether the departure would increase the risk of public harm . . . increase the risk of public harm, which is the factor under . . . the sentencing factor objective under 3383 . . . I'm sorry, 3553A2C. In this case, what the district court did was in granting the defendant's request for a downward departure, in fact, make an independent . . . I'm sorry, not independent, but individualized assessment of the defendant's circumstances in the case. And what the court did in determining that a departure was appropriate, it not only sentenced below the incorrect, if you want to call it an incorrect, guideline range of misapplication, but he also sentenced below the correct. What the district court did was impose a 54-month sentence which put him within a level 21, which is not challenged, and a criminal history category 3, which is the level below the correct range. What the district court did to get to that point was have to assess . . . determine that he had anywhere from 4, 5, or 6 criminal history points to get to a level 5, which would be the purportedly incorrect guideline range, would require a level 10. To get to the correct guideline range or to sentence within the correct guideline range would require 7, 8, or 9 criminal history points. What the district court did, in substance and I think in fact, actually remove 4 criminal history points just to get to a criminal history category 3 and in effect corrected the misapplication of 4A1.1, assuming that it occurred. Was the 2012 pre-sentence report in front of Judge Hannon? Yes. What Judge Hannon did was adopt or actually conduct a consolidated or joint revocation of supervised release and the sentencing for the instant offense. Is that in the record? Can we tell from the record that he had the 2012 PSR in front of him? It's not on the record that he had the PSR in front of him. What is on the record is that the part of the information that was included in the 2015 was obtained from the 2012 PSR. When the District Court of New Mexico transferred the case, I assume that I don't know whether the PSR 2012 was transferred with it or whether the probation officer here obtained it. But the point of the matter is that the information in the 2012 PSR was incorporated in part. Some of the information was incorporated into the 2015. There's a discrepancy between the two. That's what I need to know. There is a discrepancy between the two. The 2012, when the federal district judge in New Mexico calculated the criminal history points for the defendants, 2008, what's in there is that he received a 155-month sentence post-replication of his probation. What's in the 2015 is that he received a 25-month sentence. Now, the reason for the error is ... We don't know which is an error, do we? Right. But the district court, I mean, our position is that the district court had both before it. And the information in both was before the district court. How do we know that? I'd have to go back and look at the docket sheet. I would think, and I don't know whether it's on the docket sheet because I didn't think to look at the docket sheet for purpose of this. But generally, whether the PSR is included is reflected on the docket sheet. I know that the information that the federal district court of New Mexico transferred, but I don't know whether it's reflected on the order of transfer. It may be. I just don't have it in front of me. Regarding the plane error, the fourth prong of plane error, of course, as this court held in Escalante, that it is not automatic. And what this court does, it has reserved its discretion for those circumstances in which a miscarriage of justice would otherwise result. And this court looks to the degree of the error and the particular facts of the case. The court's inquiry is fact-intensive. And whereas here, as Judge Higginbotham noted, it's really difficult to say that there is a manifest injustice here where the district court imposed a sentence below, not just below the incorrect range, but below the correct range, and where the district court actually made a, basically conscientiously applied the guidelines in granting the departure under Note 9, and in so doing, based the sentence imposed on an individual assessment of the 3553A factors. As I said, that the downward departure under application Note 9 is unique. Because it does require the district court to make an independent evaluation, I'm sorry, not independent, I keep using that word, but I mean individualized assessment of the defendant's character and personal character and history. And the 3553A2C factors. That's my argument. Thank you, Ms. Offenham. Mr. Sokolow, you saved time for the battle. One or two points, Your Honor. Factually, I'd just like to point something out to the court. In the Statement of Reasons on page 142 of the 40859 record, the court checks the box that the court departs from the advisory guideline range. So it was a departure. The court did not check anything on the following page, page 143, which is the page you would use for a 3553A sentence. In addition, it's clear the court used the 2015 PSR at page 115 of the 509 record. The Assistant United States Attorney recites the criminal history category 5 in the 70-87 months that are in the 2015 and then says the government's recommending the low-end and concurrence... What relief do you seek from this court? What do you want us to do? I would like for you to vacate the sentence and remand for resentencing so that the district judge, post-Booker, can assess the guidelines, the defendant's family history and family responsibilities, which I guess the judge did and gave a 16-level departure and assess whether that same departure is appropriate. To affirm would be to say that causing a person to spend a year or more in federal prison does not affect the fairness or integrity of the proceedings because the judge departed downward by 16 months. If you affirm, that becomes a 3-month departure by my math. 16 minus 3 is 13. A sentence of federal imprisonment of a year I believe, at least in my humble opinion, affects the fairness and integrity of the judicial proceedings. For these reasons, I respectfully request that you vacate the sentence and remand for resentencing. Thank you, Your Honors. Thank you, Mr. Zuckerberg. Your case is under submission.